1                 UNITED STATES OF AMERICA
              EASTERN DISTRICT OF MISSOURI
2                   EASTERN DIVISION

3  UNITED STATES OF AMERICA,    )
                         )
4        Plaintiff,     )
                         )
5     vs.             )  No. 4:15-CR-404 HEA
                         )
6  JOSE ALFREDO VELAZQUEZ,    )
                         )
7        Defendant.     )

8

9         TRANSCRIPT OF CHANGE OF PLEA HEARING

10     BEFORE THE HONORABLE HENRY E. AUTREY
          UNITED STATES DISTRICT JUDGE

11          December 12, 2018

12

  APPEARANCES:

13

  For Plaintiff:     Ms. Erin O. Granger
14                 OFFICE OF U.S. ATTORNEY
                 111 S. 10th Street
15                 20th Floor
                 St. Louis, MO  63102
16

  For Defendant:     Mr. Mark A. Hammer
17                 THE HAMMER LAW FIRM
                 100 Chesterfield Business Parkway
18                 Chesterfield, MO  63005

19

20

21  REPORTED BY:       SUSAN R. MORAN, RMR, FCRR
                 Official Court Reporter
22                 111 South 10th Street
                 St. Louis, MO  63102
23                 (314) 244-7983

24

  Proceedings recorded by mechanical stenography, produced by
25  computer-aided transcription.

1          (The following proceedings were held in open court

2     on December 12, 2018 at 11:41 a.m.:)

3          THE COURT:  Good morning.  This is the matter of the

4     United States of America versus Jose Alfredo Velazquez, also

5     known as Jose Alfredo Velasquez-Cabazos and Jose Alfredo

6     Velasquez-Cavazos, Case No. 4:15-CR-404 HEA.  The matter is

7     now before the Court on notice of change of plea.  And the

8     parties have provided to the Court a document entitled Guilty

9     Plea Agreement, which consists of 19 pages.

10         Let the record further reflect that the defendant is

11    present now in open court with counsel, and the government is

12    present through counsel.

13         And, Mr. Hammer, on behalf of the defendant are you

14    ready to proceed?

15         MR. HAMMER:  Yes, Your Honor.

16         THE COURT:  Ms. Granger, on behalf of the United

17    States are you ready to proceed?

18         MS. GRANGER:  Yes, Your Honor.

19         THE COURT:  Is there an announcement, Mr. Hammer?

20         MR. HAMMER:  Your Honor, do you want to swear the

21    interpreter first, is that necessary or --

22         THE COURT:  I assume that you had sworn her in

23    already.

24         (Interpreter sworn.)

25         THE INTERPRETER:  Kathleen O'Hanlon, Your Honor, for

1    the record.

2            THE COURT:  Good to see you.

3            Mr. Hammer.

4            MR. HAMMER:  Your Honor, on behalf of my client,

5    Mr. Velazquez, having had an opportunity to review the

6    discovery with my client and spoken to him about all of his

7    rights, occasioned by going to a jury trial in this case, it

8    is his decision today to withdraw his previous plea of not

9    guilty with respect to Count 3 of the fourth superseding

10   indictment and enter a guilty plea to that charge pursuant to

11   a Guilty Plea Agreement with the United States.

12           THE COURT:  Very well.  Will you swear in the

13   defendant.

14           (Defendant sworn.)

15           THE COURT:  Very good.  Will you state your full

16   name for the record, please.

17           THE DEFENDANT:  Jose Alfredo Velazquez-Cabazos.

18           THE COURT:  And did you hear the statement I made

19   when we started this proceeding?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And is that a correct statement of why

22   we are in court today?

23           THE DEFENDANT:  Yes, it is.

24           THE COURT:  So then you understand that before I can

25   accept your plea of guilty, there are a series of questions I

1    have to ask you to be sure your plea is valid.  So in that

2    regard if I say something and you don't hear me, let me know

3    and I will speak louder.  If I say something and you don't

4    understand me, let me know and I will repeat it or rephrase

5    it.  And if you need to speak with your lawyer at any time,

6    let me know that and I will give you that opportunity.

7              THE DEFENDANT:  All right.

8              THE COURT:  Also keep in mind that you've taken an

9    oath to answer all these questions truthfully, which means

10   your failure to do that could cause the government to come

11   back with a new indictment for perjury.  Okay?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Any questions about any of that?

14             THE DEFENDANT:  No.

15             THE COURT:  How old are you?

16             THE DEFENDANT:  I'm going to be 58 next month.

17             THE COURT:  And how far in school have you gone?

18             THE DEFENDANT:  Six years.

19             THE COURT:  Do you speak any English?

20             THE DEFENDANT:  Very little.

21             THE COURT:  Do you have any difficulty hearing?

22             THE DEFENDANT:  No.

23             THE COURT:  Have you taken any medication before

24   coming to court that might keep you from understanding what's

25   going on in court today?

```
 1                  THE DEFENDANT:  No.

 2                  THE COURT:  Have you used any alcohol or drugs

 3       before coming to court today?

 4                  THE DEFENDANT:  No.

 5                  THE COURT:  Have you used any alcohol or drugs in

 6       the last 36 hours?

 7                  THE DEFENDANT:  No.

 8                  THE COURT:  Have you ever been diagnosed as having

 9       or treated for having any type of mental illness or mental

10       disease?

11                  THE DEFENDANT:  No.

12                  THE COURT:  Have you ever taken or used any type of

13       medication that might typically be used to treat mental

14       illness or mental disease?

15                  THE DEFENDANT:  No.

16                  THE COURT:  How are you feeling today?

17                  THE DEFENDANT:  Good.

18                  THE COURT:  In your own words tell me why you've

19       come to court today.  What do you want to do about your case?

20                  THE DEFENDANT:  I want to plead guilty.

21                  THE COURT:  Do you know of any reason, Mr. Hammer,

22       why the Court should not conclude your client is competent to

23       proceed?

24                  MR. HAMMER:  No, Your Honor.

25                  THE COURT:  Ms. Granger?
```

1          MS. GRANGER:  No, Your Honor.

2          THE COURT:  Let the record then reflect that on the

3     examination of the defendant and upon inquiry of counsel, the

4     Court concludes defendant is competent to proceed at this

5     time.  And having so concluded we'll proceed with its Local

6     Rule 13.05 inquiry.

7          (Pursuant to Rule 13.05, a conference was held and

8     placed under seal; after which the following proceedings

9     continued in open court:)

10         THE COURT:  Having so done, Mr. Velazquez, have you

11    had time to talk with your lawyer regarding your case?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And have you had sufficient time to talk

14    with your lawyer?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Has your lawyer given you advice

17    regarding your case?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Are you satisfied with all the advice

20    that he has given you?

21         THE DEFENDANT:  Yes.  Yes.

22         THE COURT:  Has he answered all of your questions

23    fully, completely, and to your satisfaction?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Are you satisfied with all of the advice

1      that he has given you?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  Were there any witnesses that you wanted

4      your lawyer to contact or that your lawyer should have

5      contacted but failed to contact for you?

6                  THE DEFENDANT:  No, nothing like that ever happened.

7                  THE COURT:  All right.  Was there any investigation

8      that you wanted your lawyer to do or that your lawyer should

9      have done for you that he did not do?

10                 THE DEFENDANT:  No, everything -- everything that I

11     asked him to do he has done.

12                 THE COURT:  Very good.  Was there any information

13     that you wanted your lawyer to acquire from the United States

14     or that he should have acquired from the United States, the

15     government, that he did not?

16                 THE DEFENDANT:  No, everything is okay.

17                 THE COURT:  Was there anything at all that you

18     wanted your lawyer to do for you that he failed to do or

19     refused to do?

20                 THE DEFENDANT:  No, everything is fine up until now.

21                 THE COURT:  All right.  Do you have any complaints

22     against your attorney?

23                 THE DEFENDANT:  No.

24                 THE COURT:  Are you fully satisfied with all the

25     work that he's done for you?

1              THE DEFENDANT:  Yes.

2              THE COURT:  And do you understand that when you

3    plead guilty today it means you're giving up your right to a

4    trial by jury?

5              THE DEFENDANT:  Yes.  Yes, that's correct.

6              THE COURT:  Do you understand that the Constitution

7    and laws of this nation guarantees you the right to have your

8    case decided by a jury of 12 impartial citizens?

9              THE DEFENDANT:  Yes, I do understand that, but I

10   don't want that.

11             THE COURT:  All right.  And did you talk about the

12   trial with your lawyer and whether you could have a trial or

13   not?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And as a result of those discussions

16   with your lawyer regarding that particular aspect, is it

17   correct that you now want to give up your right to a trial by

18   jury and plead guilty here today?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Do you understand, though, that if you

21   did go to trial, you would be presumed innocent and it would

22   be the obligation of the United States to prove you guilty

23   beyond a reasonable doubt by competent evidence?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you understand that you would not be

1    required to present any evidence to prove yourself innocent?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you also understand that if you were

4    to go to trial you would be able to confront any and all

5    witnesses that the government might have against you?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And do you further understand then that

8    you would be able to cross-examine those witnesses as they

9    testified in open court, under oath, and in front of a jury?

10           THE DEFENDANT:  Yes, I understand.

11           THE COURT:  Do you also understand that if you went

12   to trial you would have the ability to object to any and all

13   evidence that the government might attempt to introduce

14   against you at the trial?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And do you further understand that if

17   you went to trial, if there was some evidence that you wanted

18   to present in your own defense you would have the right to do

19   that, but the law does not require you to present any

20   evidence for any purpose?

21           THE DEFENDANT:  Yes.  I do understand, yes.

22           THE COURT:  Do you also understand that if you went

23   to trial you would have the right to testify or not testify?

24   It would be your choice.

25           THE DEFENDANT:  Yes.

1          THE COURT:  And if you decided that you did not want

2     to testify at the trial, the fact that you did not testify

3     could not be used by anyone for any purpose.

4          THE DEFENDANT:  Yes, I do understand.

5          THE COURT:  Do you have any questions so far?

6          THE DEFENDANT:  No, none.

7          THE COURT:  And do you understand that if you go

8     forward with your plea of guilty today, and if I accept your

9     plea of guilty, I will enter a judgment finding you guilty

10    beyond a reasonable doubt and impose a sentence on some

11    future date?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand further that whatever

14    sentence I impose is entirely up to me?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  And do you also understand that that's

17    true even though you might have some agreement between you

18    and the United States regarding sentencing?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And, finally, do you understand that

21    when you plead guilty today it means you're giving up your

22    right to not incriminate yourself under the Fifth Amendment

23    of the Constitution of the United States because you will

24    have to admit the facts that establish the basis for the

25    crime as well as admit the crime itself?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And is that what you want to do today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  In relation to the charge

5   that brings you here today, have you had the opportunity to

6   review the fourth superseding indictment with your lawyer and

7   talk about it?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And as a result of that review and

10  discussion, are you satisfied that you understand everything

11  in that indictment?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you have any questions about the

14  indictment?

15         THE DEFENDANT:  No.

16         THE COURT:  Are you also aware of the range of

17  punishment that applies to the charges in the indictment?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And did you discuss that with your

20  lawyer as well?

21         THE DEFENDANT:  Yes, I did.

22         THE COURT:  Do you have any questions regarding the

23  range of punishment?

24         THE DEFENDANT:  No.

25         THE COURT:  For the record then, Ms. Granger, what

1    is the range of punishment applicable here?

2         MS. GRANGER:  Your Honor, the range of punishment is

3    a minimum mandatory sentence of not less than ten years, up

4    to life in prison, a fine of no more than $10 million, or

5    both imprisonment and fine.  There is also a period of

6    supervised release to be imposed that is not less than four

7    years and a $100 special assessment fee.

8         THE COURT:  Did you hear everything that Ms. Granger

9    just said?

10        THE DEFENDANT:  Yes.

11        THE COURT:  And is there anything she just said that

12   came as a surprise to you just now?

13        THE DEFENDANT:  No.

14        THE COURT:  Is anyone forcing you to plead guilty

15   today?

16        THE DEFENDANT:  No.

17        THE COURT:  Has anyone threatened you to make you

18   plead guilty?

19        THE DEFENDANT:  No.

20        THE COURT:  Has anyone promised you anything in

21   exchange for your plea of guilty?

22        THE DEFENDANT:  No, no, no.

23        THE COURT:  Has anybody made any threats against any

24   close friends or family members to compel you to plead guilty

25   today?

1           THE DEFENDANT:  No, no, no.

2           THE COURT:  Have any of your close friends or family

3      members threatened you or otherwise forced you in some way

4      into pleading guilty for some reason?

5           THE DEFENDANT:  No.

6           THE COURT:  Are you then pleading guilty voluntarily

7      and of your own free will because that's what you want to do

8      in this case?

9           THE DEFENDANT:  Yes.

10          THE COURT:  When we started this proceeding I made a

11     reference to the Guilty Plea Agreement.  Page 19, the last

12     page of the Agreement, shows your name in print with a

13     signature above the printed name.  Is that your signature?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And did you review the document with

16     your lawyer before signing it?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And as a result of that review are you

19     satisfied that you understand everything in the Plea

20     Agreement?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you have any questions about anything

23     in the Plea Agreement?

24          THE DEFENDANT:  No.

25          THE COURT:  All right.  To be sure we all have the

1    same understanding, Ms. Granger, would you tell us what the

2    substance of the Plea Agreement is as it might relate to the

3    rights and obligations of the parties.

4         MS. GRANGER:  Your Honor, pursuant to Rule

5    11(c)(1)(B) of the Federal Rules of Criminal Procedure, in

6    exchange for the defendant's voluntary plea of guilty to the

7    offense of conspiracy to distribute five kilograms or more of

8    cocaine as charged in Count 3 of the fourth superseding

9    indictment, the government agrees to dismiss Count 1, the

10   continuing criminal enterprise, at the time of sentencing.

11        The government further agrees that no further

12   federal prosecution will be brought into this district

13   relative to the defendant's involvement in the crimes charged

14   in the indictment of which the government is aware at this

15   time.  The government agrees to waive the filing of a

16   Criminal Information seeking enhanced punishment pursuant to

17   Title 21, United States Code, Section 851.

18        Your Honor, the parties agree that the United States

19   Sentencing Guidelines apply and that either side may request

20   a sentence above or below that range.

21        With respect to the Sentencing Guidelines, Your

22   Honor, the Guideline calculations agreed to by the parties

23   are contained on page 12 of the Agreement.  Specifically the

24   parties recommend that as to Count 3 of this indictment the

25   base offense level is found in Section 2D1.1.  The parties

1     agree that the base offense level as to Count 3 is 38.   The

2     parties agree that the quantity of a mixture or substance for

3     which the defendant is accountable including relevant conduct

4     is more than 450 kilograms of cocaine.

5            The following adjustments are also contemplated by

6     the parties, Your Honor.   The parties recommend that three

7     levels be added pursuant to 3B1.1(b) as the defendant was a

8     manager or supervisor and the criminal activity involved five

9     or more participants or was otherwise extensive.

10           The parties recommend that three levels should be

11    deducted because the defendant has timely accepted

12    responsibility and notified the government of his intention

13    to plead guilty.

14           Based upon all these recommendations, the parties

15    estimate that the Total Offense Level would be 38.   If the

16    defendant is a career offender, both the Base Offense Level

17    and the Criminal History Category could be changed.

18    Defendant has discussed that with his counsel.   He's aware

19    that that could make him a Criminal History Category VI.

20           With respect to the appellate waivers, the parties

21    waive all rights to appeal all non-jurisdictional,

22    non-sentencing issues including but not limited to any issues

23    relating to pretrial motions, discovery in the guilty plea,

24    the constitutionality of the statute to which the defendant

25    is pleading guilty, and whether the defendant's conduct falls

1     within the scope of that statute.

2          In the event that the Court accepts the plea and

3     accepts the Sentencing Guidelines Total Offense Level agreed

4     and after determining a Sentencing Guidelines range sentences

5     the defendant within or below that range, as part of this

6     Agreement the defendant would waive all rights to appeal all

7     sentencing issues other than criminal history.

8          The government would hereby waive all rights to

9     appeal all sentencing issues other than criminal history

10    provided the Court accepts the plea, the agreed Total Offense

11    Level, and sentences the defendant within or above that

12    range.  Both parties reserve the right to appeal any

13    determination of the defendant's career offender status.

14          THE INTERPRETER:  Excuse me one moment.  The

15    interpreter would request you go a bit slower.

16          MS. GRANGER:  Both parties reserve the right to

17    appeal any determination of the defendant's career offender

18    status.

19          And, Your Honor, that would be the substance of the

20    outline of the guilty plea.

21          THE COURT:  Thank you.  Did you hear all that,

22    Mr. Velazquez?

23          THE DEFENDANT:  Yes, yes.

24          THE COURT:  And is there anything she said that

25    surprised you just now?

1              THE DEFENDANT:  No.

2              THE COURT:  The Court will then approve of the Plea

3        Agreement as outlined on the record.

4              Has anybody given you a promise or given you a

5        prediction regarding what your sentence from me is going to

6        be?

7              THE DEFENDANT:  No.

8              THE COURT:  And, again, you understand whatever it

9        is, it's entirely up to me?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Knowing that do you still want to go

12       forward with your plea of guilty here today?

13             THE DEFENDANT:  Yes, yes.

14             THE COURT:  Tell us then if you would, Ms. Granger,

15       what the evidence would have been if the matter had gone to

16       trial that would establish a factual basis for the charge,

17       the relevant conduct of the defendant, and the basis upon

18       which one might conclude defendant guilty beyond a reasonable

19       doubt.

20             MS. GRANGER:  Thank you, Your Honor.  Between 2012

21       and 2016 investigators conducted an investigation into the

22       Velazquez/Lemons Drug Trafficking Organization for the

23       distribution of cocaine in the Eastern District of Missouri.

24       Beginning at a time prior to or during 2012 and up to and

25       including January 13th, 2016, in the Eastern District of

1   Missouri and elsewhere, the defendant, Jose Alfredo

2   Velazquez, conspired with Adrian Lemons and others to commit

3   the offense of conspiracy to distribute five kilograms or

4   more of a mixture or substance containing cocaine.

5        The defendant coordinated routine bulk shipments of

6   cocaine from Mexico to the St. Louis area.  Facilitators,

7   which are Codefendants Garza and Cantu, accepted delivery of

8   those shipments.  Generally the shipments were quickly placed

9   in the control and possession of Adrian Lemons and his

10  associates for distribution in the St. Louis area in the

11  Eastern District of Missouri.

12       As a general matter the defendant and others were

13  responsible for transporting the cocaine from Mexico through

14  the Rio Grande Valley to St. Louis, Missouri for

15  distribution.

16       The facilitators would then receive the bulk

17  quantities of cocaine for delivery to Adrian Lemons and

18  associates who in turn then supplied several other high-level

19  drug dealers and drug trafficking organizations operating

20  within the St. Louis area and Missouri.

21       Typical cocaine shipments were between 20 and

22  33 kilograms, however, some shipments were as large as

23  100 kilograms.  Conversely, shipments of United States

24  currency delivered as part of the conspiracy as consideration

25  for the cocaine typically were hundreds of thousands of

1   dollars.  Between 2012 and 2016 the defendant was responsible

2   for coordinating the delivery of numerous shipments of

3   cocaine to the St. Louis area.  He was also responsible for

4   facilitating routine shipments of U.S. currency back to the

5   southern United States and Mexico.

6          With respect to specific events of the conspiracy,

7   on February 3rd, 2014, HSI was involved in an investigation

8   where they stopped a tractor trailer that contained bulk

9   quantities of cocaine that was destined for St. Louis,

10  Missouri.  And they seized approximately 30 kilograms of

11  cocaine.

12         On February 6th of that year investigators then

13  conducted enforcement operations and feigned a delivery to

14  one of the members of the organization that was responsible

15  for the distribution point.

16         During the operations agents seized approximately

17  $138,000.  Subsequent to that feigned delivery of imitation

18  cocaine, investigators executed a search warrant at an

19  address on North Broadway and recovered 17 kilograms of

20  cocaine, drug paraphernalia, and a .40 caliber pistol.

21         The ensuing investigation revealed that Adrian

22  Lemons operated that location on Broadway and would routinely

23  use that location to receive bulk shipments of cocaine

24  ranging from 15 to 75 kilograms per shipment from Defendant

25  Velazquez.  Velazquez would oversee the drug shipments into

1    Broadway and the shipment of money back to Mexico.

2              Thereafter they continued to use additional shipping

3    points for cocaine including but not limited to property at

4    6327 Theodosia.

5              There was a Title III wiretap investigation in this

6    case.  On August 25th, 2014, a codefendant, Dwayne Rainey,

7    met with Adrian Lemons at a stash house located on Idlewild

8    in St. Louis, Missouri to receive cocaine following

9    intercepted communications between them.

10             A subsequent investigation was done where

11   investigators attempted to stop Mr. Rainey, who fled at a

12   high rate of speed.  Following that intercepted

13   communications revealed contact between Mr. Rainey and

14   Mr. Lemons.  Mr. Rainey threw the cocaine from his possession

15   as he fled the police.

16             A search was done of the vehicle that Mr. Rainey was

17   in and investigators located suspected drug ledgers.  In

18   these ledgers the initials A.D. were labeled next to

19   suspected drug ledgers.  The initials T.T. and A.D. and the

20   word "me" also appeared next to references to kilogram

21   quantities of cocaine.  Investigators know that Lemons'

22   street name is A.D., and Codefendant Anthony Jordan's street

23   name is T.T.

24             On November 10th, 2014, investigators established

25   surveillance on Mr. Lemons.  They intercepted a call between

1   Mr. Lemons and Demetrius O'Neal.  Investigators conducted

2   surveillance of O'Neal.  Later stopped Mr. O'Neal's vehicle

3   and seized 705 plus grams of cocaine.

4       In December 2014, the San Antonio division of FBI

5   developed information relative to the transportation of bulk

6   shipments of cocaine to various cities in the U.S., which

7   included shipments of cocaine to 6327 Theodosia, which is in

8   St. Louis, Missouri.

9       On February 3rd, 2015, investigators conducted

10  surveillance near McAllen, Texas and located an individual,

11  Jose Aguirre-Cavazos.  He was -- officers stopped that

12  individual and discovered that he had inserted

13  20 kilograms -- individual kilograms of cocaine into the trap

14  of the tractor vehicle.  That suspected cocaine was tested

15  and found to be approximately 21.9 kilograms of cocaine.

16      Thereafter, agents conducted a controlled delivery

17  of imitation cocaine to 6327 Theodosia, resulting in arrests

18  and seizures of money and drug distribution locations.

19      Within that same general time frame investigators

20  were monitoring judicially authorized Title III intercepts

21  consistent with the anticipated cocaine delivery to 6327

22  Theodosia.  Investigators intercepted a conversation on

23  February 4th, 2015, where Mr. Lemons was speaking to

24  Defendant Velazquez.  On February 5th of 2015, Mr. Velazquez

25  was intercepted speaking with Codefendant Lemons about the

1   20 kilograms of cocaine that was due to be delivered on

2   February 6th, 2015.

3          From that intercept Velazquez referred to that bulk

4   cocaine shipment that was seized in McAllen and destined for

5   St. Louis.

6          On February 6th, 2015, investigators in St. Louis

7   conducted a controlled delivery of imitation cocaine to 6327

8   Theodosia.  Prior to the delivery Codefendants Garza and

9   Cantu dropped off $570,245 at that address to Clarence

10  Miller.  Investigators then executed a search warrant at that

11  property and seized that money.

12         Following that there was a conversation that was

13  intercepted between Mr. Velazquez and Codefendant Adrian

14  Lemons where Adrian Lemons advised Mr. Velazquez that the

15  police were at the house.  There was a consent search at

16  Idlewild Avenue on February 6th, 2015.  An additional

17  $305,380 in U.S. currency was seized, bringing the total U.S.

18  currency seized on February 6th to $875,625.  Significantly,

19  during that search agents also seized additional notes which

20  constituted drug ledgers.

21         Although the amount of cocaine attributable to the

22  defendant is difficult to calculate with precision, the

23  parties are in agreement that based upon the known evidence

24  and including relevant conduct as well as the conduct of

25  codefendants reasonably foreseeable to him, the defendant is

23

1     accountable for at least 450 kilograms of cocaine.

2             In the event of trial expert testimony would

3     establish that that amount is consistent with an amount

4     possessed for distribution.

5             And that would be the substance of the facts, Your

6     Honor.

7             THE COURT:  Thank you very much.  Did you hear

8     everything that Ms. Granger just said?

9             THE DEFENDANT:  Yes, sir.

10            THE COURT:  And are all of those facts true and

11     correct?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Do you then agree and admit that between

14     2012 and January 13th, 2016, two or more persons reached an

15     agreement or came to an understanding to distribute a mixture

16     or substance containing a detectable amount of cocaine?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Do you also agree and admit that you

19     knowingly and voluntarily joined in the agreement or

20     understanding either at the time it was first reached or at

21     some later time while it was still in effect?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Do you likewise agree and admit that at

24     the time you joined in the agreement or understanding you

25     knew its illegal purpose?

24

1           THE DEFENDANT:  Yes.

2           THE COURT:  And, finally, do you agree and admit

3    that the amount of mixture or substance containing a

4    detectable amount of cocaine involved in the offense and

5    attributable to you by virtue of your conduct is

6    five kilograms or more?

7           THE DEFENDANT:  Yes.

8           THE COURT:  How do you plead to the charge?

9           THE DEFENDANT:  Guilty.

10          THE COURT:  Do you know of any reason, Mr. Hammer,

11   why I should not accept your client's plea of guilty?

12          MR. HAMMER:  No, Your Honor.

13          THE COURT:  Ms. Granger?

14          MS. GRANGER:  No, Your Honor.

15          THE COURT:  Let the record then reflect that the

16   Court will enter its order and judgment finding that the

17   defendant is knowingly and voluntarily entering his plea of

18   guilty, that he's knowingly and voluntarily waiving his right

19   to a trial by jury and all rights incident thereto, that the

20   defendant is also fully cognizant of the range of punishment

21   applicable to the charge.  The Court therefore accepts

22   defendant's plea of guilty and enters its judgment finding

23   defendant guilty beyond a reasonable doubt.

24          A presentence investigation report will be ordered

25   and sentencing will be deferred to March 12th, 2019 at

```
1    1:30 in the afternoon.  Anything else, Mr. Hammer?

2              MR. HAMMER:  No, Your Honor.

3              THE COURT:  Ms. Granger?

4              MS. GRANGER:  No, Your Honor.  Thank you.

5              THE COURT:  That will conclude this proceeding and

6    we'll see you back on that day, Mr. Velazquez.

7              THE DEFENDANT:  Thank you.

8              THE COURT:  Thank you.

9              (Court in recess at 12:17 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           C E R T I F I C A T E

2           I, Susan R. Moran, Registered Merit Reporter, in

3      and for the United States District Court for the Eastern

4      District of Missouri, do hereby certify that I was present

5      at and reported in machine shorthand the proceedings in the

6      above-mentioned court; and that the foregoing transcript is

7      a true, correct, and complete transcript of my stenographic

8      notes.

9           I further certify that I am not attorney for, nor

10     employed by, nor related to any of the parties or attorneys

11     in this action, nor financially interested in the action.

12          I further certify that this transcript contains

13     pages 1 – 26 and that this reporter takes no responsibility

14     for missing or damaged pages of this transcript when same

15     transcript is copied by any party other than this reporter.

16          IN WITNESS WHEREOF, I have hereunto set my hand

17     at St. Louis, Missouri, this 20th day of December, 2019.

18

19                        _____

20                        /s/ Susan R. Moran
                          Registered Merit Reporter

21

22

23

24

25